UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**DAMAR RODRIGUEZ,**

                                **Plaintiff,**                      03-CV-0415(Sr)

v.

**SGT. SKUBIS, et al.,**

                                **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment. Dkt. #10.

Plaintiff filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. #1. In his complaint, plaintiff alleges four separate incidents that he claims occurred while he was housed at the Wyoming Correctional Facility. *Id*. Currently before the Court is defendants' motion for summary judgment. Dkt. #22. Defendants argue that because plaintiff failed to exhaust his administrative remedies, his claims fail as a matter of law.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed this action on May 28, 2003, pursuant to 42 U.S.C. § 1983, seeking compensatory damages for injuries he allegedly sustained as a result of excessive use of force, sexual harassment and retaliation while

he was incarcerated at the Wyoming Correctional Facility ("Wyoming"), in violation of his constitutional rights under the First and Eighth Amendments to the United States Constitution. Dkt. #1. Specifically, plaintiff's complaint named the following as defendants: Superintendent Giambruno; Deputy Hall; Captain Malensky; Lieutenant Richards; Sergeant Skubis; Sergeant Johnson; Counselor Harris; Senior Counselor Brunette; Corrections Officer Brooks; Corrections Officer Sweet (incorrectly spelled Sweets in the complaint); Corrections Officer Wilson; Corrections Officer Golden; Corrections Officer Lewis and three "John Does." *Id*.[1] Plaintiff's complaint alleges four separate and distinct incidents that occurred on July 2, 2001, July 6, 2001, in or about September 2002 and in or about December 2002. *Id*. As discussed above, following District Judge Larimer's Decision and Order, six defendants remain, Sergeant Skubis, Counselor Harris, and Corrections Officers Brooks, Sweet, Wilson and Lewis. Only defendants Harris, Brooks, Sweet, Wilson and Lewis have appeared in this action. Dkt. #6. Based upon a review of the Western District of New York docket sheet, it does not appear to this Court that defendant Sergeant Skubis was ever served with a copy of the Complaint.

---

[1] Plaintiff's claims against Superintendent Giambruno, Deputy Hall, Captain Malensky, Lieutenant Richards, Sergeant Johnson, Senior Counselor Brunette and Corrections Officer Golden were dismissed on September 22, 2003, by United States District Judge David G. Larimer pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Dkt. #5. In addition, District Judge Larimer dismissed plaintiff's sexual harassment claim against defendant Harris, however, plaintiff's retaliation claim against defendant Harris remains. *Id*. Accordingly, the following claims remain and are presently before this Court: (1) plaintiff's excessive force claims against defendants Sweet and Skubis; (2) plaintiff's excessive force and retaliation claims against defendants Wilson and Lewis; (3) plaintiff's excessive force claims against defendants Brooks and Sweet; and (4) plaintiff's retaliation claim against defendant Harris. *Id*.

**The July 2, 2001 Incident**

Plaintiff alleges that on July 2, 2001, while he was on his way to the mess hall, defendants Sweet and Skubis, together with two unidentified officers, pulled him aside, asked him what housing unit he was from and that defendant Skubis made derogatory remarks toward plaintiff. Dkt. #1. Plaintiff further alleges that defendants Sweet, Skubis and the two unidentified officers forcefully put him against the wall to frisk him, bent his left arm behind his back, grabbed his hair and slammed the right side of his head/face into the wall. *Id*. Plaintiff maintains that he sustained injuries to his left shoulder and to the right side of his head/face, however, according to plaintiff, Lieutenant Richards and the nurse lied in the medical reports stating that he had not sustained any injuries. *Id*. Moreover, plaintiff alleges that he wrote a complaint to the Superintendent concerning the incident and that Lieutenant Richards investigated in the matter "in a revengeful hostile matter [sic] to impress [sic] & intimidate me to drop the complaint and also Deputy Hall lie [sic] and hide [sic] the complaint covering the incident; threatening me to drop the complaint." *Id*. Based on the foregoing, plaintiff asserts that his Eighth Amendment right to be free from cruel and unusual punishment was violated.

**The July 6, 2001 Incident**

Plaintiff alleges that he was assaulted by defendants Wilson, Lewis and an unidentified Sergeant on July 6, 2001 while being admitted to the Special Housing

Unit ("SHU") for the incident that occurred on July 2, 2001.  Dkt. #1.  Plaintiff claims that he was assaulted in retaliation for writing a letter/complaint against Sergeant Skubis in relation to the July 2, 2001.  *Id*.  Specifically, plaintiff alleges that "C.O. Wilson slammed me on the floor kick [sic] me in the stomach, and punch [sic] me in the face several times, while C.O. Lewis held me on the floor, then C.O. Wilson kick [sic] me by my pubic hair (rightside lower) and stomped on my stomach."  *Id*.  Moreover, plaintiff claims that he suffered a hernia as a result of this incident and was taken to the Erie County Medical Center for treatment.  *Id*.  Finally, plaintiff's complaint states that "C.O. Wilson said if I complaint [sic] or said anything, I would regret it."  *Id*.

**The September 2002 Incident**

Plaintiff alleges that on or about September 9, 2002, defendant Brooks assaulted him in the visiting room.  *Id*.  Specifically, plaintiff claims that defendant Brooks made comments in a joking manner to plaintiff's fiancé about her large breasts and that she should not wear such little shirts.  *Id*.  Plaintiff asserts that he told his fiancé to complain to the Inspector General about these comments and thereafter, defendant Brooks threatened to end the visit and issued plaintiff a misbehavior ticket.  *Id*.  At the conclusion of the visit, plaintiff claims that defendant Brooks made sure that plaintiff was the last one in the visiting room and then punched plaintiff in the stomach twice while defendant Sweet watched.  *Id*.

**The December 2002 Incident**

Lastly, plaintiff alleges that at his quarterly visit to his counselor in December 2002, defendant Harris sexually harassed him and retaliated against him by issuing a misbehavior ticket to him because he complained to the Superintendent and Senior Counselor about her prior instances of sexual harassment. As noted above, plaintiff's claims of sexual harassment against defendant Harris were dismissed with prejudice by District Judge Larimer and the only claim that survives against defendant Harris is plaintiff's retaliation claim. Dkt. #5. Specifically, plaintiff alleges that defendant Harris made advances towards him and when he refused, she removed his fiancé's name from his approved phone list. Thereafter, plaintiff claimed he refused to attend his counseling sessions with defendant Harris and complained to the Superintendent and the Senior Counselor and as a result, he claims that in retaliation, defendant Harris issued a misbehavior ticket, he was disciplined, confined to the SHU and ultimately transferred to another facility. Dkt. #1.

**DISCUSSION AND ANALYSIS**

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Exhaustion of Administrative Remedies**

The PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory[2] and should be applied broadly. *Id.* at 524. The *Nussle* Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues. *Id.* at 524-25. "Even when the prisoner seeks relief not available in grievance proceedings" – such as monetary damages – "exhaustion is a prerequisite to suit." *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

The New York State Department of Correctional Services employs a three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee as set forth in 7 N.Y.C.R.R. §

---

[2] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate. *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the Inmate Grievance Resolution Committee's adverse written response as set forth in 7 N.Y.C.R.R. § 701.7(b)(1); and appeal to the Central Office Review Committee in Albany, New York within four working days of receipt of the superintendent's adverse written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1). *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004).

In assessing what constitutes exhaustion of administrative remedies, the Court of Appeals for the Second Circuit determined that,

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d 663 . . . . The Court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 . . ., or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba*,[3] 366 F.3d at 163. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply

---

[3] *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004).

> with administrative procedural requirements." *Giano v. Goord*, 380 F.3d 670. . . .

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).

The Second Circuit has held, however, that although administrative remedies may have been available and the government has neither waived nor is estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with the administrative procedural requirements may otherwise be justified. *Id.* at 689 (internal citations omitted). For example, in *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), the "special circumstances" justifying plaintiff's failure to exhaust consisted of his reasonable interpretation of DOCS regulations. The plaintiffs in both *Giano* and *Hemphill* claimed that they attempted to exhaust their administrative remedies by writing directly to the Superintendent and that such writing comported with DOCS procedural rules or, in the alternative, reflected a reasonable interpretation of the regulations. Following its holding in *Giano* that reliance on a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow the procedural rules to the letter, the Second Circuit in *Hemphill* remanded the matter to the district court for consideration, in light of *Giano*, of this possible justification for Hemphill's failure to follow normal grievance procedures. *Hemphill*, 308 F.3d at 690. Additionally, the Second Circuit in *Hemphill* further stated that the district court should determine whether some defendants were estopped from asserting non-exhaustion as an affirmative defense insofar as threats made may have justified Hemphill's failure to follow proper grievance procedures. *Id*.

In the instant case, defendants Harris, Brooks, Sweet, Wilson and Lewis argue that they are entitled to summary judgment with respect to each of plaintiff's claims, because he failed to exhaust his administrative remedies. Dkt. #26. Indeed, based on the record before the Court, defendants maintain that there is no evidence to suggest that the plaintiff ever properly submitted a grievance, much less exhausted his administrative remedies. In support of defendants' motion for summary judgment, Wyoming Correctional Facility Inmate Grievance Program Supervisor Jeffrey Weber submitted an affidavit stating that a review of the Grievance Logs and plaintiff's grievance file for the period June 2001 through January 8, 2003, did not reveal any grievances filed by plaintiff in relation to the four alleged incidents. Dkt. #24, ¶ 7. In fact, Supervisor Weber further states that plaintiff only filed two grievances while at the Wyoming Correctional Facility, neither of which related to the four incidents alleged in plaintiff's complaint. *Id*. at ¶ 8. Additionally, although plaintiff's complaint suggests that plaintiff may have been threatened to drop his complaints, the record before this Court is otherwise devoid of any evidence to support such a theory.

**The July 2, 2001 Incident**

In opposition to defendants' motion for summary judgment, plaintiff states,

> Plaintiff Damar Rodriguez did exhaust his remedies by submitting complaints to the Department of Corrections Security Deputy, the Superintendent Giambruno at the Wyoming Correctional facility and to the Inspector General which is the highest investigation division in the state prisons division. For the Record (FACT); The facility grievance committee is not allow [sic] to handle any type of complaints regarding sexual harassment or assaults from staff.

Dkt. #30, p.2. Attached to plaintiff's complaint are a number of documents that purport to relate to the July 2, 2001 incident and the ensuing investigation. Plaintiff's letter/complaint to the Superintendent and New York State Department of Correctional Services Commissioner Goord, dated July 2, 2001 and attached to the complaint, requested that an investigation be conducted pursuant to Civil Service Law section 75 with respect to the allegations of assault and harassment that occurred on July 2, 2001. A separate document dated July 5, 2001 and directed to plaintiff states

> [y]ou were interviewed by Lt. Richards who investigated your complaint. You were examined by facility medical staff who found no evidence of injury. Sgt. Skubis, C.O. Sweet, and C.O. Stokes all state you were pat frisk [sic] by C.O. Sweet, that your actions made it difficult for C.O. Sweet to pat frisk you. But they all state no one else touched you in any manner.

Dkt. #1. A letter from Deputy Commissioner and Counsel Anthony J. Annucci dated July 25, 2001 to plaintiff is also attached to the complaint. *Id*. In the letter, Deputy Commissioner Annucci responds to plaintiff's letter pursuant to Civil Service Law, Section 75 and advises plaintiff,

> Civil Service Law, Section 75, does not authorize an individual in the custody of the Department to initiate a disciplinary proceeding against an employee of the Department. Therefore, your document(s) are being returned to you. We will not retain a copy of your document(s) in this office. You may refer this matter to the Inmate Grievance Office.

Dkt. #1.

In addition to his July 2, 2001 letter/complaint, plaintiff also relies on correspondence between The Legal Aid Society and the Superintendent to amplify his

claim that he exhausted his administrative remedies. Specifically, by letter dated July 10, 2001, The Legal Aid Society endeavored to alert the Superintendent to alleged retaliatory behavior occurring in relation to the alleged July 2, 2001 incident. *Id*. Superintendent Giambruno responded to the letter from The Legal Aid Society by letter dated July 13, 2001 stating,

> [a]ll of the allegations made by Inmate Rodriguez, 01-A-0571, have been thoroughly investigated by higher level supervisory staff. The involved employees have categorically denied the allegations made. Mr. Rodriguez has been examined by facility medical staff and shows no evidence of injury. At this time, no witnesses or evidence has been produced that would substantiate his claim that he has been the victim of misconduct by staff.

Dkt. #1. During his deposition, plaintiff testified that he filed a grievance with the Inmate Grievance Supervisor, however, because a search of the facility records did not reveal any such grievance related to the alleged July 2, 2001 incident, it appears that plaintiff was referring to his letter/complaint to Superintendent Giambruno and Commissioner Goord. Dkt. #26, p.7. Even assuming for purposes of argument that plaintiff's letter/complaint was either submitted to the Inmate Grievance Supervisor or that the letter/complaint was sufficient to comply with the established grievance procedures, plaintiff admits that he did not appeal from the denial of his grievance as submitted. Dkt. #25, pp.7-9. Accordingly, the Court concludes that defendants have demonstrated their entitlement to judgment as a matter of law with respect to the alleged July 2, 2001 incident on the basis that plaintiff failed to exhaust his administrative remedies.

**The July 6, 2001 Incident**

During his deposition, plaintiff testified that he never filed a grievance with respect to the alleged July 6, 2001 incident. Dkt. #26, p.8. Rather, he claimed he relied on The Legal Aid Society to handle it. *Id*. Specifically, plaintiff testified, "I let the Legal Aid Society handle it. And she filed the complaint to the Department of Correction ... So basically that was the complaint that was filed to the superintendent." Dkt. #25, p.6. Plaintiff further testified that he did not appeal the denial of that "grievance." *Id*. Thus, assuming for purposes of argument that the letter from The Legal Aid Society to the Superintendent was sufficient to comply with the established grievance procedures, plaintiff admits that he did not appeal from the denial of his grievance as submitted. Dkt. #25, p.6. Accordingly, the Court concludes that defendants have demonstrated their entitlement to judgment as a matter of law with respect to the alleged July 6, 2001 incident on the basis that plaintiff failed to exhaust his administrative remedies.

**The September 2002 Incident**

Plaintiff admitted during his deposition that he never filed a grievance with respect to the September 2002 incident. Dkt. #25, p.6. Moreover, a review of the DOCS records does not reveal any grievances filed by plaintiff with respect to the September 9, 2002 incident alleged in the complaint. Dkt. #24, ¶¶ 6-8. Finally, plaintiff offers nothing in opposition to defendants' motion for summary judgment to refute defendants' claim that he failed to exhaust his administrative remedies. *See* Dkt. #30. Accordingly, based upon the record before it, this Court concludes that defendants

have again demonstrated their entitlement to judgment as a matter of law with respect to the alleged September 2002 incident on the basis that plaintiff failed to exhaust his administrative remedies.

**The December 2002 Incident**

Finally, with respect to plaintiff's allegations that defendant Harris retaliated against him by issuing a misbehavior report because plaintiff complained to the Superintendent and defendant Harris' supervisor about defendant Harris' sexual harassment of plaintiff, plaintiff again admits that he never filed a grievance concerning this incident. Dkt. #25, pp.10-17. Moreover, a review of the DOCS records does not reveal that any grievances were filed by plaintiff with respect to this incident. Dkt. #24, ¶¶ 6-8. Accordingly, based upon the record before it, this Court concludes that defendants have again demonstrated their entitlement to judgment as a matter of law with respect to the alleged December 2002 incident on the basis that plaintiff failed to exhaust his administrative remedies.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #22) is **GRANTED**.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED: Buffalo, New York
April 28, 2009

<u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**